UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-03136-CAS-PDx | Date | October 4, 2024 |
| Title | Dedicato Treatment Center, Inc. v. Aetna Life Insurance Co. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 22, filed on September 5, 2024)

## I. INTRODUCTION

On March 12, 2024, plaintiff Dedicato Treatment Center, Inc. ("Dedicato") filed a complaint against defendant Aetna Life Insurance Company ("Aetna") in Los Angeles County Superior Court, alleging six causes of action: (1) breach of contract; (2) breach of implied contract; (3) breach of the implied covenant of good faith and fair dealing; (4) promissory estoppel; (5) quantum meruit; and (6) unfair competition. Dkt. 1-1 ("Compl.").

On April 17, 2024, defendant removed the case to this Court. Dkt. 1.

On May 24, 2024, defendant filed a motion to dismiss. Dkt. 12. On July 9, 2024, the Court granted Aetna's motion to dismiss, with leave for plaintiff to amend its complaint. Dkt. 18. On July 22, 2024, plaintiff filed its first amended complaint. Dkt. 19 ("FAC"). The FAC alleges six claims: (1) breach of contract; (2) breach of implied contract; (3) breach of the implied covenant of good faith and fair dealing; (4) promissory estoppel; (5) quantum meruit; and (6) unfair competition. FAC at 9-13.

On September 5, 2024, defendant filed a motion to dismiss plaintiff's FAC. Dkt. 22 ("MTD"). It additionally attached a request for judicial notice, dkt. 22-2, as well as supporting declarations, dkts. 22-3, 22-4. On September 16, 2024, plaintiff filed an opposition to Aetna's motion to dismiss. Dkt. 23 ("Opp."). On September 23, 2024, defendant filed a reply. Dkt. 24 ("Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges the following facts in its FAC.

Plaintiff is a California-based corporation that offers drug and alcohol treatment services, with its principal place of business in Pasadena, California. FAC ¶ 1. Defendant is an insurance company with its principal place of business in Hartford, Connecticut. Id. ¶ 4.

Plaintiff seeks to recover costs associated with substance abuse treatments that it provided to three patients ("Patients"), each of whom was covered under a health insurance plan offered by defendant. Id. ¶ 7. It alleges that its claims are "not based on any of the provisions in [the Patients'] healthcare insurance plans, but [rather] on the specific representations [defendant] made to [plaintiff]." Id.

Plaintiff is an "out of network" provider for the Patients. Id. ¶ 20. This means that it does not have a contract with defendant for the provision of healthcare services to the Patients. Id. ¶¶ 16, 20. According to plaintiff, out-of-network healthcare arrangements involve the healthcare providers billing the insurance company for what the provider "believes is the reasonable value for the services it has rendered," which "is typically the provider's full billed rates." Id. ¶ 18. The insurance company then "pays what [the insurance company] believes [is] the reasonable value of services rendered, which may or may not be the provider's full billed rates." Id. ¶ 18.

Additionally, whenever a patient requests substance abuse treatment, plaintiff contacts defendant to confirm that the patient is eligible for treatment under an Aetna healthcare plan—this process is called a "Verification of Benefits" ("VOB"). Id. ¶ 9. As part of the VOB process, defendant confirms that (1) the patient is covered under one of defendant's healthcare plans; (2) the patient is eligible for the treatment requested; and (3) the healthcare provider (here, plaintiff) meets defendant's eligibility requirements to provide the treatment requested. Id. Defendant will not provide a VOB if any of these criteria are not met, and plaintiff will not generally provide treatment in the absence of a VOB. Id. Defendant has advised plaintiff and other healthcare providers that it reserves

the right to refuse to pay for any treatment if a provider fails to obtain defendant's advance approval for the course of treatment. Id. ¶ 11.

Here, defendant provided plaintiff with a VOB for each of the Patients. Id. ¶ 10. Plaintiff then screened each patient and prepared a recommended course of treatment. Id. ¶ 11. Dedicato representatives subsequently spoke with Aetna representatives and provided plaintiff's recommended course of treatment for each Patient. Id. ¶¶ 10-12. Defendant approved the recommended courses of treatment and provided plaintiff with treatment authorization numbers. Id. ¶ 13. Plaintiff then proceeded to provide the recommended treatments to the Patients and invoiced defendant for the full billed rates of the services provided, totaling $704,400.00. Id. ¶¶ 14-15, 20, 22.

Plaintiff alleges that plaintiff and defendant "agreed that [plaintiff] would be paid the reasonable value of [plaintiff]'s services." Id. ¶ 20. It believes that its full billed rates, totaling $704,400.00, "represent[s] the reasonable value of its services." Id. Defendant has paid $146,222.55. Id. ¶ 22. Plaintiff thus claims that defendant owes $599,041.55 in unpaid services. Id. ¶ 25.

Separately, plaintiff alleges that its claims do not relate to defendant's healthcare plan. Id. ¶ 26. First, plaintiff states that its claims do not rely on defendant's plan because plaintiff is an out-of-network provider, with no contractual obligations to defendant. Id. ¶ 29. Plaintiff alleges that when calling Aetna, it was not attempting to secure plan-covered payments, but instead attempting to determine if it was eligible to treat "Aetna's insured and whether Aetna would potentially agree to pay for that treatment." Id. Plaintiff states that the relationship between plaintiff and defendant was governed by custom and practice and was thus not premised on the existence of an ERISA plan. Id. ¶ 31. While Aetna verified that Patients were eligible for treatment under its healthcare plan, that verification allegedly did not relate to plaintiff's claims, which arose after the VOB and during the authorization process. Id. ¶ 32. Thus, plaintiff argues that its claims are based solely on defendant's representations and plaintiff's performance, involving no reference to Aetna's plan. Id. ¶ 33.

Second, plaintiff states that its claims do not "impermissibly connect" with defendant's plan, for five reasons: (1) plaintiff is not bound by any terms or conditions of the plan; (2) plaintiff's claims do not pose an undue intrusion on plan administration, since Aetna "always has the authority to reject a provider's recommended treatment

authorization request"; (3) Aetna knowingly and voluntarily accepted any intrusion on plan administration when it authorized plaintiff to treat the insured Patients; (4) Aetna is in a superior position to know about and eliminate any intrusions, and should thus bear its risks as a matter of public policy; (5) if plaintiff's claims are preempted, such a "blanket immunity" will "effectively eliminate" the ability of plan participants to obtain care from out-of-network providers, as no out-of-network provider would agree to treat patients if insurance companies were permitted to disclaim their representations. Id. ¶¶ 34-39.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Defendant moves to dismiss plaintiff's FAC pursuant to the same theories in its first motion to dismiss, arguing that (1) plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), § 514(a), 29 U.S.C. § 1144(a); and (2) plaintiff's FAC fails to state a plausible claim for relief. MTD at 8. The Court discusses each issue in turn.

### A. ERISA Preemption

Defendant argues that plaintiff's claims are all still preempted by ERISA. Id. at 14. ERISA provides "a uniform regulatory regime over employee benefit plans" and "includes expansive preemption provisions." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). There are two basic types of ERISA preemption: (1) "conflict preemption" under § 514(a) of 29 U.S.C. § 1144(a); and (2) "complete preemption" under § 502(a) of ERISA, 29 U.S.C. § 1132(a). Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944–45 (9th Cir. 2009). "All of these preemption provisions defeat state-law causes of action on the merits." Fossen v. Blue Cross and Blue Shield of Montana, Inc.,

660 F.3d 1102, 1107 (9th Cir. 2011). As in its first motion to dismiss, defendant appears to argue that only conflict preemption applies in this case. MTD at 14. Accordingly, the Court analyzes solely whether the amended claims in plaintiff's FAC are barred by conflict preemption under Section 514(a).

Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Section 514(a) thus requires two things: (1) the policy or plan at issue must constitute an "employee benefit plan," and (2) the state law claims must "relate to" that employee benefit plan. Plaintiff concedes that Patients' healthcare plans are employee benefit plans. See Opp. at 10, n.1 ("Dedicato does not dispute that the Patients' healthcare plans are "employee benefit plans" within the meaning of Section 514(a)."). The Court proceeds to analyze whether plaintiff's claims "relate to" ERISA plans.

The Supreme Court has further identified two categories of state-law claims that "relate to" an ERISA plan— (1) claims that have a "reference to" an ERISA plan; and (2) claims that have "an impermissible 'connection with'" an ERISA plan. Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 665 (9th Cir. 2019). A state-law claim has a "reference to" an ERISA plan if it "is premised on the existence of an ERISA plan" or if "the existence of the plan is essential to the claim's survival." Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co., 103 F.4th 597, 602 (9th Cir. 2024). "A claim has an impermissible connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." Id. at 604.

Relying on Bristol, as in its first motion to dismiss, defendant argues that "relate to" preemption applies here because plaintiff's claims "are premised on [its] calls to Aetna to verify coverage and the existence of benefits and to seek preauthorization of services per the terms of the patients' [ERISA] plans." MTD at 16. Defendant notes that plaintiff has already conceded that the existence of the plans "is what caused plaintiff to contact Aetna in the first place." Id. Defendant argues that the FAC does not change the gravamen of plaintiff's original complaint: "that the amount paid by defendant, pursuant to the terms of the Patients' healthcare plans, was less than the reasonable value of services rendered." Id. Further, defendant cites additional case law finding that "ERISA preempts these sorts of state law claims," including Healthcare Ally Mgmt. of California, LLC v. WSP USA, Inc., No. CV 22-4814-DMG-PVCx, 2024 WL 2880204, at *4 (C.D.

Cal. May 1, 2024) and Healthcare Ally Mgmt. of California, LLC v. Arup USA, Inc., No. CV-05876-JLS-MAA (C.D. Cal Aug. 26, 2024). Id. at 16-17.

Defendant contends that its obligation to pay plaintiff for services provided to the Patients “arises only because the Patients participated in ERISA-governed plans.” Id. at 17. It further asserts that any representations made to plaintiff “were based on, or related to, the individual Patients’ health plans, as opposed to promises of specific amounts related to specific services to be provided by [p]laintiff.” Id. Thus, plaintiff’s claims “necessarily depend on the existence and terms of ERISA-governed plans.” Id. Moreover, “[a]llowing [p]laintiff to prevail on any of its causes of action would require the court to disregard the Patients’ health plans.” Id. Defendant maintains that the claims relate to the Patients’ health plans because “the [VOB], requirements for preauthorization, and the payment of benefits for medical services are all determined by the ERISA plan terms.” Id.

Additionally, defendant argues that plaintiff’s claims are barred because they bear “an impermissible connection with an ERISA plan.” Id. Defendant contends that plaintiff’s claims satisfy this manner of “relate to” preemption because they (1) unduly intrude on a central matter of plan administration and (2) interfere with nationally uniform plan administration. Id. at 18. As for the former, plaintiff’s claims allegedly intrude on Aetna’s “overarching system of verifying out-of-network coverage and authorizing treatment by phone, while later conditioning reimbursement ton the ERISA plan’s payment provisions.” Id. If plaintiff were allowed to proceed with its claims, defendant argues that courts would be forced “to adjudicate whether all payments made to out-of-network providers are ‘reasonable,’ regardless of the terms and rates set forth in patients’ plan”—the exact kind of intrusion that ERISA’s preemption provision seeks to prevent. Id. As for the latter, plaintiff’s claims allegedly interfere with nationally uniform plan administration because they would lead to employee benefits governed “not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law.” Id. at 19-20.

In opposition, plaintiff contends that it has alleged two new facts in its FAC: first, that its claims do not relate to an ERISA plan, and second, that its claims do not have an impermissible connection with an ERISA plan. Opp. at 9. Plaintiff distinguishes Bristol, where the Ninth Court found that conflict preemption applied after a health insurance company refused to reimburse a provider for services because the provider’s “fee-

forgiving meant that the terms of the ERISA plans no longer permitted payment."[1] Id. at 11. Plaintiff argues that, unlike in Bristol, it was not "seeking clearance to provide… plan-covered services" or attempting to obtain "a reimbursement rate in the form of a percentage of the 'usual and customary rate' (UCR) charged for its services." Id. Rather, when plaintiff called Aetna, it "had no idea what services Aetna's plan covered." Id. Additionally, plaintiff argues that "[u]nlike the provider in Bristol, Dedicato was not subject to any "'fee-forgiveness' or other disqualifying condition; it was not subject to any ERISA plan provision whatsoever." Id. Further, unlike the provider in Bristol, plaintiff "alleges no "parallel claim for the denial of ERISA benefits." Id.

Next, plaintiff argues that "Dedicato's claims are not based on the VOB; they are based entirely on what occurred after the VOB during the authorization and treatment process." Id. Plaintiff describes the VOB as a "preliminary gateway to determine, as a threshold matter, whether further discussions should continue." Id. Plaintiff argues that following the VOB, Dedicato recommended a course of treatment and defendant was free to accept or reject that recommendation. Id. Aetna's acceptance of the recommendation made contractual liability possible, as Aetna's promise and plaintiff's performance had "nothing to do with any plan provisions." Id. at 12. Similarly, plaintiff argues that "whether or not the Patients had a plan is irrelevant" to their claims, as Dedicato would have the same claims against Aetna "if the Patients were *not* covered." Id. at 13. Finally, plaintiff states that if the VOB alone created "relate to" preemption, "no provider could ever have any contract claims against any health insurance company." Id. at 13-14.

Plaintiff also argues that its claims have no "impermissible connection" with an ERISA plan, reiterating the five arguments from its FAC. Id. at 15. Plaintiff distinguishes Bristol on these grounds, arguing that "here, there is no evidence that Aetna's VOB and authorization process involves any intrusion." Id. Plaintiff contends that Aetna has a database and "can check in an instant" whether a patient is covered and if the proposed treatment should be authorized, without any intrusion into plan administration. Id. at 15-16. Finally, plaintiff refutes defendant's argument about interference with national plan administration, stating that the language of Bristol "cannot be read as a blanket declaration of interference." Id. at 16. Plaintiff contends that such

[1] Fee-forgiving refers to a practice whereby a healthcare provider fails to collect financial contributions (co-pays, deductibles, etc.) that plan participants are required to pay under their plans.

an interpretation would "sanction any kind of misrepresentation and fraud possible, so long as it occurred during an 'authorization' call." Id. At a minimum, plaintiff argues that it is entitled to discovery on the question of interference. Id.

In reply, defendant restates the arguments in its moving papers and argues that the new allegations in plaintiff's FAC are unsupported legal conclusions that the Court must reject. Reply at 4. Defendant again argues that plaintiff's claims make "reference to" an ERISA plan. Id. at 5. It contends that the FAC does not change the Court's previous analysis: plaintiff's claims are preempted because the plan is what caused plaintiff to contact Aetna. Id. Next, defendant rebuts plaintiff's argument that it would have the same claim against Aetna if the Patients were not covered by an Aetna plan, stating that if "plaintiff called Aetna and Aetna misrepresented that the patient was covered… then plaintiff would have valid state law claims to assert based solely on the misrepresentations." Id. at 9. Finally, defendant contends that the existence of preemption here does not mean that "no provider could ever have any contract claims against any health insurance company." Id. Defendant cites Bristol's recognition that "other circuits have permitted providers' state law claims for misrepresentation of health coverage to proceed when the patients were covered by an ERISA plan, but—contrary to the insurer's representations—lacked coverage for the specific treatment rendered." Id.

The Court finds that plaintiff's claims are barred by conflict preemption pursuant to ERISA § 514(a) because they "relate to" ERISA-governed plans. Specifically, the Court finds that plaintiff's claims (1) make "reference to" ERISA plans; and (2) bear an impermissible "connection with" ERISA plans. The Court recognizes that plaintiff's FAC differs from its original complaint through the additions of paragraphs 26-40, in which plaintiff alleges that its claims do not relate to or impermissibly connect with defendant's healthcare plan. While the Court must take as true Dedicato's factual allegations on a motion to dismiss, the Court need not accept factual allegations which are in fact legal conclusions. Iqbal, 556 U.S. at 678. Here, given that plaintiff's FAC contains the same factual allegations as its original complaint, the Court finds that Bristol still controls the ERISA preemption analysis. As the Ninth Circuit recognized in Bristol:

> When [the healthcare provider] called [the prospective patients' health insurance company] to verify out-of-network coverage, the context for this communication concerned whether reimbursement was available under the ERISA plans that [the insurance company] administers. There is no dispute that the patients were indeed covered by the plans, and when [the healthcare provider] sought preauthorization

> to perform certain treatments, it was seeking clearance to provide what all agree were plan-covered services.
>
> . . .
>
> By attempting to secure plan-covered payments discussed via phone through the alternative means of state contract law, [the healthcare provider] is seeking to obtain through a [state contract] remedy that which [it] could not obtain through ERISA. This effort triggers preemption.

Bristol, 103 F.4th at 603 (internal quotations omitted).

Importantly, the Ninth Circuit was careful not to limit its holding to disputes involving fee-forgiveness: "Subjecting plan administrators to the prospect of binding contracts through pre-treatment calls would thus risk stripping them of their ability to enforce plan terms that cannot be applied prior to treatment, *whether related to fee-forgiving or otherwise*." Bristol, 103 F.4th at 605 (emphasis added).

Here, the claims in plaintiff's FAC are still premised on its VOB call to defendant to confirm coverage and to obtain pre-authorization for treatment. Plaintiff argues that its claims arose *after* the VOB, during the authorization process. Opp. at 12. However, the Court finds that this clarification does not change the preemption analysis, as Dedicato still called Aetna in the first place "to confirm whether Aetna would authorize it to treat Aetna's insured." Id. at 11. Accordingly, the Court again finds that plaintiff's claims are premised on the existence of an ERISA plan. See Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co., No. CV 19-0709 PSG (ADSX), 2022 WL 18232296, at *8 (C.D. Cal. Dec. 9, 2022) ("The Plan is the reason Sure Haven called to verify benefits and seek authorization to provide services to Cigna-insured patients, and that then led to Cigna's alleged promise to pay a percentage of the UCR for those services. On that basis, the Court finds that the claims are preempted"); Healthcare Ally Mgmt. of California, LLC v. WSP USA, Inc., No. CV 22-4814-DMG (PVCX), 2024 WL 2880204, at *4 (C.D. Cal. May 1, 2024) ("Plaintiff does not dispute that it would not have called Aetna in the first place but for the existence of the health plan. Under these circumstances, the Court concludes that HAMOC's state law claims are preempted by section 514(a) of ERISA under the 'reference to' standard") (internal quotations omitted).

Additionally, the Court finds that even if plaintiff's claims did not make "reference to" an ERISA plan, they would still be barred for bearing an impermissible "connection with" an ERISA plan. The Ninth Circuit has recognized that:

> if providers could use state contract law to bind insurers to their representations on verification and authorization calls regardless of plan rules on billing practices, benefits would be governed not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law. This is the type of discordant regime that ERISA's comprehensive pre-emption of state law was meant to minimize.

Bristol, 103 F.4th at 605 (internal quotations omitted).

Here, the Court previously found that plaintiff sought "to bind defendant to an understanding, allegedly formed during VOB calls, that defendant would pay plaintiff the 'reasonable value of services rendered.'" Dkt. 18 at 10-11. The plaintiff's FAC seeks the same recovery—"the difference between the amount that defendant paid pursuant to the Patients' plans and the total amount that plaintiff billed," or $599,041.55. Dkt. 18 at 11; FAC ¶ 25. Permitting plaintiff to pursue such claims would still force courts to adjudicate whether all payments made to out-of-network providers are "reasonable," regardless of the terms and rates set forth in patients' plans. Accordingly, plaintiff's claims are barred because they bear an impermissible "connection with" ERISA plans. The Court **GRANTS** defendant's motion to dismiss.

### B. Failure to State a Claim

Because the Court finds that plaintiff's claims are barred under ERISA conflict preemption, it does not address defendant's other arguments regarding whether plaintiff's FAC fails to state a claim for relief.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's motion to dismiss with prejudice.

IT IS SO ORDERED.

| | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |